IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

BRANDON SMITH,

    Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
*et al.*

    Defendants.

Case No.: GJH-16-3931

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Brandon Smith, an inmate committed to the custody of the Department of Public Safety and Correctional Services, brings this civil rights Complaint alleging inadequate medical treatment after sustaining a spider bite. ECF No. 4. Defendant Wexford Health Sources, Inc. ("Wexford")[1] moves to dismiss the Complaint or in the alternative for summary judgment. ECF No. 12. Smith was advised of his right to file an opposition to the motion and of the consequences of failing to do so, *see* ECF No. 13, but has not opposed the dispositive motion. No hearing is required to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendant's motion, construed as a motion for summary judgment, shall be granted and the Complaint as to the unserved, unnamed defendants shall be dismissed without further service attempts being made.

---

[1] Defendants "Nurse Jessica" and "Nurse Jill" were never served with the Complaint as they could not be identified with the information provided. *See* ECF No. 10.

1

## I. BACKGROUND

Smith alleges that on October 3, 2016, at 8:40 a.m., he reported being bitten by a spider to Officer W. Hazzard, who contacted medical staff on Smith's behalf. ECF No. 4 at 1.[2] Smith states that Hazzard was concerned because Smith's "body was extremely hot and the surrounding area around [his] knee and leg had sw[olle]n up and [he] could b[are]ly walk." *Id*. Smith claims that, when Hazzard called medical, he spoke with Sgt. Nhem who provided assurances that she would have Smith called up to medical after the nurse returned from rounds on the disciplinary segregation unit. *Id*. At 10:15 a.m., when "pill call" was announced for Smith's housing unit, he walked to the medical unit with assistance and asked "Nurse Jessica" if someone was going to see him for the spider bite. *Id*. Jessica confirmed with Nhem that Smith's name was on a list of people to be seen and asked to see the area where Smith had been bitten. After Smith showed the nurse and Nhem where he had been bitten, he returned to his housing unit. *Id*.

Smith had not been seen by 12:20 p.m., and Hazzard called the medical unit again on Smith's behalf. Nhem again reassured Hazzard and Smith that Smith was on a list to be seen and would be called up for an examination when time allowed. *Id*. at 1–2. Smith had still not been seen when the "4 to 12 shift came in" so he explained the problem to Officer Tyler. *Id*. at 2. Tyler called the medical unit at 6:15 p.m. and he was told to call back in 20 minutes. *Id*. When no return call was received, Tyler called again at 9:20 p.m., but he was told again to call back in 20 minutes. *Id*.

Despite the reassurances Smith received, he claims he was not seen for treatment of his spider bite until October 6, 2016, when he was seen by a nurse. *Id*. Smith claims the "only

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

reason" he was seen that day was that he spoke again with Jessica and told her he had never been seen even though he had been told numerous times he would be called up. *Id.* Smith states that he lifted his pant-leg to show Jessica the knee where he had been bitten and claims that at this time it was "leaking yellow, brown and green stuff out of it." *Id.* Upon seeing Smith's leg, he claims Jessica stopped pill call and told Sgt. Nhem to add Smith as a sick call. *Id.* Smith states that when he was finally seen for the bite he had the wound checked, cleaned, and re-bandaged and was given Motrin, but no antibiotics for the infection. *Id.* at 2–3. Smith claims that when he reported for wound dressing on October 8, 2016, "Nurse Jill" refused to provide it because Officer Marshall told her not to do so. *Id.* at 3. Smith claims that Jill knew he was supposed to be treated, but she told him she could not see him that day. *Id.*

Wexford asserts that Smith has failed to allege that he required medical treatment for a serious medical need and that, in any event, he received appropriate medical care. ECF No. 12. Wexford further asserts that Smith never submitted a sick call slip regarding the alleged spider bite, despite his assertion otherwise. ECF No. 12-3 (Sick Call Slip Records). Smith was seen on October 6, 2016, and the Progress Note indicates that his left knee showed signs of infection including swelling, pain and drainage. ECF No. 12-4. The area was cleaned with antiseptic soap and water, and Smith was educated on wound care. *Id.* An order for wound check and dressing change was written for the following three days, and Smith was prescribed Motrin and warm compresses for the pain. *Id.* Smith was further instructed to put in a sick call slip if the symptoms worsened. *Id.* Medication administration records indicate that Smith received treatment for the following three days. ECF No. 12-5. His wound was checked and the dressing was changed on October 7, 8, and 9, 2016. *Id.* On October 10, 2016, the wound was noted as "healed." *Id.*

3

## II. STANDARD OF REVIEW

Defendant's motion is styled as a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) ("By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. (emphasis in original).

4

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III. DISCUSSION

While Smith alleges that he was denied adequate and timely medical care, the record shows that his treatment complied with that required by the Eighth Amendment. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

5

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

6

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken); *see also Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (refusal to evaluate transgender inmate for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm).

There is no allegation that Smith suffered a debilitating injury as a result of the delay in being seen for a spider bite. The undisputed evidence indicates he never submitted a sick call slip seeking medical attention for the wound. ECF No. 12-3. But even if Smith requested medical attention without formally submitting a sick call slip, Smith does not dispute that his wound was treated and healed in a matter of three days. *See* ECF No. 11-1 (Smith providing record of October 6, 2016 treatment). Thus, the claim does not satisfy the objective prong of an Eighth Amendment claim, that is, there was no serious medical need. Regardless, the purported three day delay in providing treatment was not unreasonable given Smith's relatively minor injury. Even assuming Wexford should have treated Smith immediately upon hearing his complaints on October 3, 2016, the record shows that, at worst, Wexford's staff was negligent—but negligence

does not support a finding of deliberate indifference. Therefore, Smith's Eighth Amendment claim fails.[3]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 12, construed as a Motion for Summary Judgment, shall be granted. A separate Order follows.

Dated: March 20, 2018

GEORGE J. HAZEL
United States District Judge

---

[3] Separate from the merits of Smith's claim, the claim against Wexford also fails because, while Wexford may be found liable under 42 U.S.C. § 1983 as a private corporation contracted by the State of Maryland to provide medical services to inmates, it cannot be liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999).

8